IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**KEVIN D.,**

        **Plaintiff,**

  v.                                        Civil Action 3:24-cv-00082
                                                      Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Kevin D., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **SUSTAINS** Plaintiff's Statement of Errors (Doc. 8), **REVERSES** the Commissioner of Social Security's non-disability finding, and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.  BACKGROUND**

Plaintiff filed his applications for DIB and SSI in August 2021, alleging disability beginning October 28, 2020, due to liver disease, asthma, COPD, anxiety disorder, panic disorder, depression, possible OCD, vision problems, high blood pressure, and acid reflux. (R. at 253–80, 301). After his applications were denied initially and on reconsideration, Administrative Law Judge Kevin Barnes (the "ALJ") held a telephone hearing on December 29, 2022. (R. at 35–64). The ALJ denied benefits in a written decision on April 7, 2023. (R. at 14–34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on March 14, 2024 (Doc. 1), and the Commissioner filed the administrative record on May 8, 2024. (Doc. 7). The matter has been briefed and is ripe for consideration. (Docs. 8, 10, 11).

### A.     Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and the testimony from the administrative hearing as follows:

> *** [Plaintiff] alleged difficulty with memory, completing tasks, concentration, and getting along with others, but no difficulty understanding or following instructions (B4E/6). *** [Plaintiff] testified that he has panic attacks several times per week, which last up to two hours each time (Testimony). [Plaintiff] testified that he does not know what triggers the panic attacks (Testimony). [Plaintiff] testified that he has a limited ability to handle conflicts with others (Testimony).

(R. at 22).

### B.     Relevant Medical Evidence

The ALJ summarized the medical records as to Plaintiff's mental health impairments as follows:

> [Plaintiff] has severe depression; anxiety; and panic disorder (Record). [Plaintiff] reported that his primary problems relate to his mental health impairments (B9F/3). On consultative examination, the examiner noted that [Plaintiff] was not initially forthcoming with information regarding his substance abuse history, but ultimately reported a history of alcohol abuse and that he has maintained sobriety for six months (B10F/2). [Plaintiff] reported that he does not like to be around people, and he has ongoing panic attacks (B9F/3; Testimony). However, on psychological consultative examination, [Plaintiff] maintained adequate eye contact, and he displayed no mood disturbances (B10F/4). The examiner noted that [Plaintiff] showed no overt signs of anxiety or depression (B10F/6). [Plaintiff]'s treatment notes consistently indicate that he has good eye contact, speech, and psychomotor activity, as well as normal or cooperative behavior (B15F/6, 16, 17, 18; B17F/2, 14). [Plaintiff]'s treatment notes consistently indicate that he has normal memory, including intact recent memory and intact remote memory (B1F/62; B6F/50; B15F/6, 16, 17, 18; B17F/2, 14). On consultative examination, [Plaintiff] adequately completed digit span testing, and recalled three out of three words both immediately and after a brief time delay (B10F/4). The examiner also concluded that there was no indication of impairment in this area (B10F/6). [Plaintiff]'s treatment notes consistently indicate that he has intact attention and intact

> concentration (B1F/62; B6F/50; B15F/6, 16, 17, 18; B17F/2, 14). On consultative examination, [Plaintiff] adequately calculated four iterations of serial sevens in 30 seconds without error, and he completed serial threes in 32 seconds without error (B10F/4). Additionally, [Plaintiff] correctly mentally calculated simple addition, subtraction, and multiplication problems (B10F/4). The examiner noted that [Plaintiff] was able to follow conversationally and he did not require verbal redirection (B10F/6). [Plaintiff] also demonstrated adequate task persistence (B10F/6). [Plaintiff]'s treatment notes consistently indicate that he has normal and intake insight and judgment (B6F/50; B15F/6, 16, 17, 18; B17F/2). On consultative examination, the examiner noted that [Plaintiff]'s judgment appears to be sufficient for his to make decisions affecting his future and to conduct his own living arrangements efficiently and has adequate insight into his difficulties (B10F/4). The examiner noted that [Plaintiff] showed no significant emotional distress during the evaluation (B10F/6). Additionally, there was no indication of anger management concerns (B10F/6). In September 2021, less than one year from [Plaintiff]'s alleged onset date, a psychiatrist concluded that [Plaintiff] has a bevy of marked and extreme limitations in mental health functioning (B4F). However, there are not supporting treatment notes (Record). Contrary to that one opinion, the overall evidence of record reflects mostly normal mental health functioning, despite [Plaintiff]'s reports of anxiety and depression (Record). Moreover, psychological consultative examination in March 2022, less than one year from the September 2021 opinion, showed mostly normal functioning in each mental health area (B10F versus B4F). The state agency psychologists of record, who reviewed the evidence in April 2022 and August 2022, both agreed that [Plaintiff] has no more than moderate limitation in any mental health area. These three opinions are bolstered by the treatment notes (Record). The undersigned curbed the evidence in a light more favorable to [Plaintiff] by including work limitations relating to understanding, remembering, or applying information. Therefore, [Plaintiff]'s mental health impairments were accounted for with a limitation to only simple, routine, and repetitive tasks, with other limitations to work pace, social interaction, including a limitation to no tandem tasks, which goes to the quality of such interactions, and work stress.

(R. at 24–25).

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements through December 31, 2023. (R. at 19). The ALJ found that Plaintiff has not engaged in substantial gainful activity since October 28, 2020, his alleged onset date of disability. (*Id.*). The ALJ determined that Plaintiff suffered from the severe impairments of fatty liver disease; cirrhosis of the liver; asthma; chronic obstructive pulmonary disease (COPD); centrilobular emphysema; perennial rhinitis; hypertensive

3

heart disease without heart failure; depression; anxiety; and panic disorder. (R. at 20). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance, stoop, crouch, kneel, and crawl; avoid concentrated exposure to environmental irritants, such as fumes, odors, dust, and gas, poorly ventilated areas, and industrial chemicals; avoid hazardous machinery and unprotected heights; work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes; no interaction with the public; and only occasional interaction with coworkers, with no tandem tasks.

(R. at 22).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 23).

Relying on the vocational expert ("VE")'s testimony, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a construction laborer, and composite jobs of a control panel assembler and sheet metal worker. (R. at 26–27). Considering his age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as an inspector, marking clerk, or routing clerk. (R. at 27–28). Consequently, the ALJ concluded that Plaintiff was not disabled. (R. at 28).

4

**II.     STANDARD OF REVIEW**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990)); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.*. (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**III.     DISCUSSION**

In his Statement of Errors, Plaintiff contends that the ALJ erred in his RFC determination by not properly evaluating the medical source opinion of psychologist, Maximilian Tokarsky, Psy.D.  (Doc. 8 at 6–15).  The Commissioner maintains that the ALJ properly evaluated Dr. Tokarsky's opinion under the regulations and the ALJ's conclusion is supported by substantial evidence. (Doc. 10 at 3–17).

A claimant's RFC is an assessment of "the most [a claimant can still do despite [his]] limitations." 20 C.F.R. § 404.1545(a)(1) (2012).  A plaintiff's RFC assessment must be based on

5

all the relevant evidence in her file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).[1] As for medical opinions and prior administrative findings, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5). Though there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and non-medical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And, although an ALJ may discuss how she

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

6

evaluated the other factors, she is generally not required to do so. *Id.* If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3). At base, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

Against that background, Plaintiff takes aim at the ALJ's treatment of Dr. Tokarsky's opinion. On September 21, 2021, Dr. Tokarsky completed a mental capacity assessment that opined Plaintiff's degree of limitation in several areas of mental functioning. (R. at 488–490). The checklist-type form instructs the provider to rate a patient's "ability to do work-related activities on a day-to-day basis in a regular work setting . . . ." (R. at 488 (emphasis omitted)). Dr. Tokarsky rated Plaintiff's degree of limitation in 22 abilities that fell into one of four categories: understanding, remembering, or applying information; concentration, persistence, or maintaining pace; adapting or managing oneself; and interacting with others. (R. at 488–490). He rated on a scale that ranged from no limitation to extreme limitation.[2] (*Id.*). Of note, Dr. Tokarsky rated Plaintiff as having a marked limitation in: (1) the ability to ignore or avoid distractions while working; (2) the ability to work close to or with others without interrupting or distracting them; (3) the ability to cooperate with others or ask for help when needed; (4) the ability to understand and respond to social cues; and (5) the ability to respond to requests, suggestions, criticism, correction, and challenges. (R. at 489–490). Dr. Tokarsky also rated Plaintiff as having an extreme limitation in: (1) the ability to handle conflicts with others; and (2) the ability to keep social

---

[2] Relevant here, the form defined a "marked" limitation as one where the Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." (R. at 488). Similarly, the form defined an "extreme" limitation as one where the Plaintiff is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." (*Id.*).

interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (R. at 490). Following these, Dr. Tokarsky provided brief narrative explanations for his ratings. (R. at 488–490 ("[Plaintiff] may be inhibited to attend to instruction and complete tasks at times. He will be more likely impacted to make reasonable judgments when working with others."); ("[Plaintiff] may be slow to adapt or lack motivation for adherence due to apathy and anhedonia associated with his psychological symptoms."); ("[Plaintiff's] socially-based fears are his most limiting. He demonstrates a preference for isolation and a fear of his own impulses during conflict.")).

Of Dr. Tokarsky's opinion, the ALJ commented that "[i]n September 2021, less than one year from the claimant's alleged onset date, [Dr. Tokarsky] concluded that the claimant has a bevy of marked and extreme limitations in mental health functioning (B4F). However, there are not supporting treatment notes (Record)." (R. at 24). The ALJ ultimately found Dr. Tokarsky's opinion unpersuasive:

> On September 21, 2021, a psychiatrist, Dr. Tokalsky, submitted an opinion (B4F). Dr. Tokalsky's opinion was given less than one year from [Plaintiff]'s alleged onset date, and the record contains a more recent psychiatric opinion less than one year from his opinion (B10F). Dr. Tokalsky concluded that [Plaintiff] has marked to extreme limitations in several areas of mental functioning, however, there are no treatment notes supporting such severe findings. Moreover, less than one year from his opinion, an updated psychiatric evaluation and opinion shows much less severe findings, consistent with the overall treatment record and other opinion evidence, the bulk of which occurred after his September 2021 opinion. Therefore, Dr. Tokalsky's opinion is not persuasive.

(R. at 26).[3] Plaintiff argues this evaluation fails to properly consider and articulate the supportability and consistency of Dr. Tokarsky's opinion. (Doc. 8 at 10–16). The Court agrees in part.

---

[3] The ALJ incorrectly names Dr. Tokarsky as Dr. Tokalsky.

A.  **Supportability**

In evaluating the supportability of a medical opinion, an ALJ must evaluate the objective medical evidence, as well as the support for that opinion and strength of the evidence on which the medical source based their conclusions. *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4650, 2022 WL 1793149, at *6 (S.D. Ohio, June 2, 2022), *report and recommendation adopted*, No. 2:21-CV-4650, 2022 WL 2237057 (S.D. Ohio June 22, 2022). Only "a minimum level of articulation is needed to provide sufficient rationale for a reviewing court." *Id*. (internal quotations omitted). Nevertheless, an ALJ is required to "build an accurate and logical bridge between the evidence and [his] conclusion." *Timmons v. Comm'r of Soc. Sec.*, No. 2:19-CV-3, 2019 WL 5445510, at *3 (S.D. Ohio Oct. 24, 2019).

Here, the Court agrees with Plaintiff that the ALJ failed to sufficiently articulate the supportability of Dr. Tokarsky's opinion. The ALJ stated that there are no treatment notes in the record supporting the marked and extreme limitations opined in Dr. Tokarsky's assessment. (R. at 26). Earlier in the opinion, he similarly commented that "there are not supporting treatment notes" to backup Dr. Tokarsky's opinion. (R. at 24). In the first instance, the ALJ did not direct the reader, or the Court, to any of Dr. Tokarsky's treatment notes. And in the second instance, he merely cited to the record as a whole. Yet notably, the record contains several treatment notes made by Dr. Tokarsky while Plaintiff used his psychological services. (*See e.g.*, R. at 794 (September 2021 treatment note that Plaintiff "remains resistant to change and lacks motivation for exposure to challenge"), 803 (September 2021 treatment note that Plaintiff presented with "visible agitation demonstrated by repeated scratching of the skin"), 812 (August 2021 treatment note that Plaintiff reported persistent and severe depression with passive suicidal ideation), 840–41 (July 2021 treatment note that Plaintiff presented as "fatigued and with apathy" and accepted a

9

"referral to [a] higher level of care"), 890 (June 2021 treatment note that Plaintiff lacks motivation for change), 899 (May 2021 treatment note that Plaintiff experienced "increased seclusion to the home environment"), 917 (May 2021 treatment note that Plaintiff "chose to escape most recent self-directed exposure. He describes lack of motivation to leave the house."); *see also* R. at 677 (October 27, 2020, patient health questionnaire rating Plaintiff's depression as "severe.")).

After the September 2021 assessment, Dr. Tokarsky continued to see Plaintiff for a time and memorialized the sessions. (*See, e.g.*, R. at 760 (November 2021 treatment note that Plaintiff's depression and generalized anxiety were both severe, based on assessment scores, and that Plaintiff "remains resistant to exposure and underlying anxiety"), 770 (October 2021 treatment note that Plaintiff reported "blunted affect with decrease intensity of spectrum of emotions including depression symptoms," and he "lost enjoyment of comedy which was his greatest distractor"), 778 (October 2021 treatment note that Plaintiff "continues to lack motivation for action-oriented tasks")). Yet nowhere in the ALJ's opinion does he cite to or explain his consideration of these records. Additionally, the ALJ made no comment on Dr. Tokarksy's narrative explanation contained in the mental assessment checklist itself. (R. at 488–490).

For certain, an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). But here, the ALJ's brief account makes no attempt whatsoever to articulate why Dr. Tokarsky's opinion lacked support from the months-worth of treatment notes or the attached

supporting explanations. Though only a minimum level of articulation is required, an ALJ must do more than the ALJ did here. Simply put, the ALJ's statement on supportability has failed to "build an accurate and logical bridge between the evidence and [his] conclusion." *Timmons*, 2019 WL 5445510, at *3.

The Commissioner argues that when the ALJ found no "supporting" treatment records, he meant he found no objective medical evidence in Dr. Tokarksy's treatment notes to support the opined limitations. (Doc. 10 at 8). To this end, the Commissioner provides various treatment records wherein Dr. Tokarsky either "recit[ed] Plaintiff's subjective complaints" or completed subjective testing. (*Id.*, citing *e.g.*, R. at 757, 777, 812). The Commissioner also supplies a portion of the disability hearing transcript wherein the ALJ is first unable to find Dr. Tokarsky's treatment notes and then, after Plaintiff's attorney directs him to some, asks "[w]here's the objective medical evidence to support the opinion?" (*See* R. at 55–58).

This argument's first flaw is that it ignores that a plaintiff's subjective complaints "are pertinent to the diagnosis and treatment of mental health concerns." *Connie S. v. Comm'r of Soc. Sec.*, No. 2:21-CV-05938, 2023 WL 2477484, at *4 (S.D. Ohio Mar. 13, 2023) (collecting cases); *Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709 (S.D. Ohio 2019) ("To the extent that the ALJ discounted the treating psychologists' opinions because they relied on Plaintiff's subjective complaints, such an assessment demonstrates a fundamentally flawed understanding of mental impairments."). The argument's second flaw is that the Commissioner puts words in the ALJ's mouth. The ALJ never specified Dr. Tokarsky's opined limitations lacked support specifically from objective treatment notes—only generally that "no treatment notes [support] such severe findings." (R. at 26). The Court is unable to accept such post hoc rationalizations. *See, e.g., Williams v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00235, 2021 WL 2456821, at *5 (S.D. Ohio

11

June 16, 2021) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014), *report and recommendation adopted*, No. 3:20-CV-235, 2021 WL 3035959 (S.D. Ohio July 19, 2021)); *Salisbury v. Comm'r of Soc. Sec.*, No. 2:19-CV-5277, 2020 WL 5290536, at *7 (S.D. Ohio Sept. 4, 2020) (collecting cases), *report and recommendation adopted*, No. 2:19-CV-5277, 2021 WL 164256 (S.D. Ohio Jan. 19, 2021).  And while the ALJ may have commented on the opinion appearing to lack objective support at the disability hearing, there are any number of reasons such a statement would not make it into the final decision.  The Court declines to read language into the ALJ's decision that is not there.

As for the narrative explanations, the Commissioner argues that explanations in Dr. Tokarksy's opinion were properly dismissed by the ALJ because words such as "may" and "more likely" "are not particularly definitive."  (Doc. 10 at 7, n.4).  Courts have found the use of similar qualifying or vague language unsupportive of specific functional limitations.  *See, e.g.*, *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018); *Benson v. Saul*, No. 3:19-CV-02804, 2021 WL 1554219, at *5 (N.D. Ohio Jan. 11, 2021), *report and recommendation adopted sub nom. Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150 (N.D. Ohio Mar. 2, 2021).  Yet again, the Commissioner makes an argument that does not appear in the ALJ's decision.  In both *Quisenberry* and *Benson*, the ALJ specified that the language employed by the provider was vague or speculative.  *Quisenberry*, 757 F. App'x at 434 ("Second, as noted by the administrative law judge, Dr. Haduck's opinion is quite vague, and does not actually describe any specific functional limitations that would preclude the claimant from engaging in all work activity in perpetuity." (citation and internal quotation marks omitted)); *Benson*, 2021 WL 1554219, at *5 ("The ALJ is correct in noting that Dr. Wierwille's opinion frequently employs qualifying language such as "may" or "likely," which merely suggest that some limitations are

12

possible."). Here, the ALJ never said that Dr. Tokarksy's narrative explanations did not support the opined limitations because of vague language. Once more, the Court is unable to accept this kind of post hoc rationalization. *See, e.g.*, *Williams*, 2021 WL 2456821, at *5 (citation omitted); *Salisbury*, 2020 WL 5290536, at *7.

All told, the Commissioner's justifications do not overcome the fact that the ALJ failed to properly articulate the supportability of Dr. Tokarksy's opinion. Still, finding an articulation error "does not mean reversal is required" if the error was harmless. *Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065, at *7 (S.D. Ohio Dec. 13, 2023) (citing *Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217, at *3–4 (S.D. Ohio Mar. 14, 2022)), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024). The Court cannot say the ALJ's error is harmless here. The ALJ provided no other reasoning that the assessment itself was deficient. *Cf. Howard H.*, 2022 WL 765217, at *4 (S.D. Ohio Mar. 14, 2022) (finding a supportability articulation error was harmless when the ALJ also commented that the opined limitations were not stated using vocationally relevant terms). Therefore, had the ALJ given credence to Dr. Tokarksy's opined limitations, there remains room in Plaintiff's RFC for further mental limitations or potentially of a different outcome all together.

At base, the ALJ did not evaluate Dr. Tokarksy's opinion in accordance with the regulations. The Commissioner would have the Court look past the error and find that the ALJ's conclusions otherwise were supported by the record. (*See generally* Doc. 10 (discussing the ALJ's treatment of the record as a whole and arguing substantial evidence supports the ALJ's determination)). But the ALJ's "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc.*

13

*Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)). And while there may be evidence in the record upon which the ALJ could have relied to find Dr. Tokarksy's opinion unsupported and unpersuasive, the ALJ must still provide a "coherent explanation of his reasoning." *Stacie B.*, 2022 WL 1793149, at *7 (S.D. Ohio June 2, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021)). Because the ALJ has failed to provide that articulation, substantial evidence does not underlie his determination that this opinion was unsupported and unpersuasive.

### B. Consistency

On the other hand, the ALJ properly considered the consistency of Dr. Tokarsky's opinion with the rest of the record. In particular, the ALJ highlighted that an evaluation completed after Dr. Tokarsky's September 2021 opinion "shows much less severe findings, consistent with the overall treatment record and other opinion evidence." (R. at 26). Here, the ALJ cited to a March 2022 evaluation with clinical psychologist Dr. Haley O'Connell. (*Id.*, citing R. at 698–703). As the ALJ explained earlier in the opinion, Dr. O'Connell's evaluation "showed mostly normal functioning in each mental area." (R. at 24–25 (comparing Dr. O'Connell's opinion with Dr. Tokarsky's opinion)); *see William G. v. Comm'r of Soc. Sec.*, No. 2:22-CV-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) ("When evaluating consistency, the Undersigned looks to the ALJ's . . . discussion of the record elsewhere in the opinion. This is because the ALJ's opinion ought to be read as a whole." (citation omitted)), *report and recommendation adopted*, No. 2:22-CV-213, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022). For example, the ALJ noted that O'Connell evaluated Plaintiff as showing no overt signs of anxiety or depression, as being able to maintain eye contact, and as displaying no mood disturbances or significant emotional distress. (R. at 24, citing R. at 701–03). Additionally, Plaintiff completed digit span testing;

14

recalled three out of three words immediately and after a brief delay; successfully calculated serial sevens and serial threes; calculated simple addition, subtraction, and multiplication problems; followed conversation without requiring verbal redirection; demonstrated task persistence; had judgment sufficient to make decisions about the future a conduct his living arrangements; and had adequate insight into his difficulties. (*Id.*, citing R. at 701–03). The ALJ also noted that "other opinion evidence" from the record that occurred after Dr. Tokarsky's opinion similarly demonstrated less severe findings. The ALJ likewise explained those earlier in his opinion. (R. at 24–25, citing *e.g.*, R. at 1159 (July 2022 evaluation showing Plaintiff as having good eye contact and speech; intact attention and insight; and a cooperative behavior), 1130 (August 2022 evaluation showing the same), 1173 (September 2022 evaluation showing the same)). Accordingly, the ALJ properly considered and articulated, albeit briefly, the consistency of Dr. Tokarsky's opinion.

Plaintiff seems to argue that the ALJ is required to articulate how an opinion is consistent or inconsistent with every other opinion in the record. (Doc. 8 at 15 ("a proper consistency evaluation demands acknowledgement of both consistent and inconsistent evidence")). He specifically faults the ALJ for not discussing how Dr. Tokarsky's opinion may have been consistent with the opinion of nurse practitioner Cherise Varner. (*Id.*; *see* R. at 492–93 (September 2021 physical assessment)). Notwithstanding that the ALJ found Nurse Varner's opinion not persuasive (R. at 26), an ALJ does not have to discuss every piece of evidence. *William G.*, 2022 WL 4151381, at *9. Ultimately, the ALJ sufficiently articulated the consistency of Dr. Tokarsky's opinion as compared to the rest of the record and "buil[t] an accurate and logical bridge between the evidence and [his] conclusion" that allows the Court to follow his reasoning. *Timmons*, 2019 WL 5445510, at *3.

15

In sum, although the ALJ properly evaluated the consistency of Dr. Tokarsky's opinion, he failed to adequately articulate its supportability. This is not to say the ALJ will ultimately find Dr. Tokarsky's opinion sufficiently supported or ultimately persuasive. But because the ALJ did not comply with the regulations, remand is appropriate to allow for proper consideration of Dr. Tokarsky's opinion.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors (Doc. 8) **SUSTAINED**, and the Court **REVERSES** the Commissioner's non-disability finding and **REMANDS** the case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

IT IS SO ORDERED.


Date:   August 27, 2024                              /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE